

**SIGNED this 06th day of June, 2012.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

_____

# United States Bankruptcy Court

Western District of Texas
San Antonio Division

| | |
|---|---|
| IN RE: | BANKR. CASE NO. |
| JOHN KRZYSZTOF WALD | 11-53644 |
| DEBTOR | CHAPTER 7 |

**DECISION REGARDING OBJECTION TO EXEMPTIONS**

Creditor Holly Horrigan filed an Objection to Exemption [Docket No. 16] objecting to the Debtor's homestead exemption. On March 20, 2012, the court held a hearing on Ms. Horrigan's Objection, The court then took the matter under advisement as the Objection presented a novel question of law concerning the intersection of Texas community property law and section 522(d) of the Bankruptcy Code.

**Facts**

The Debtor's Schedule C claims a homestead exemption in 118 Mossy Cup Lane, San Antonio, Texas. The Debtor lists the value of this exemption as $0.0. The Debtor claimed this

1

exemption pursuant to section 522(d)(1) of the Code, having chosen the federal rather than the state exemptions. The Debtor's reason for listing the value of his exemption as $0.0 stems from the Debtor's assertion that he owns only a one half interest in the property because it was purchased during the Debtor's marriage with community funds. The Debtor lists the value of the property as $364,930.00, making the value of his one-half interest $182,465.00. The property is encumbered by a lien in the amount of $231,480.54. Only the Debtor's name appears on the Note and Deed of Trust for this property. Accordingly, the Debtor maintains that because the secured claim on the property exceeds the value of his one half interest in the property, his exemption should be listed as having a value of $0.0.

Ms. Horrigan, on the other hand, asserts that because the property constitutes sole or joint management community property, the entire asset must come into the Debtor's estate pursuant to section 541(a)(2). As such, Ms. Horrigan maintains that the Debtor's "aggregate interest" in the property, under section 522(d)(1), amounts to a 100% interest in that property. Ms. Horrigan then asserts that because the entire asset is included in the Debtor's estate, and because the Debtor valued his exemption in that asset at $0.0, under *Schwab v. Reilly*, 130 S. Ct. 2652 (2010), the more than $100,000 in equity in the property constitutes property of the estate to be administered by the trustee for the benefit of the Debtor's creditors.

**Discussion**

The central question to be decided here is the meaning of the Debtor's "aggregate interest" in community property as used in section 522(d)(1), when the Debtor's spouse has not joined in the bankruptcy filing.

Section 541(a)(2) brings into the estate "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—(A) under the sole, equal, or joint management and control of the debtor." 11 U.S.C. § 541(a)(2). Neither Ms. Horrigan nor the Debtor seriously disputes that the property at issue here constitutes community property. The property was purchased with community funds during the Debtor's marriage. That the note and deed of trust name only the Debtor as obligor and grantee does not affect the nature of that property as community property. In Texas, even if a deed names only one spouse as grantee, the property is presumed to be community property under the general presumption that property acquired by one spouse during the marriage is community property, unless the deed expressly indicates that the property is conveyed as separate property. *See Kahn v. Kahn*, 94 Tex. 114, 58 S.W. 825, 826 (1900); *Robles v. Robles*, 965 S.W.2d 605, 616 (Tex. App.--Houston [1st Dist.] 1998, pet. denied) (real property presumed to be community because deeds executed and delivered to husband during marriage had no recital that conveyance was to his separate estate); *see also* TEX. FAM. CODE § 3.003(a) (reciting the community property presumption). In any event, as the Debtor continues to reside on the property, it is by definition property that is under the "sole, equal or joint management and control of the Debtor." *See* 11 U.S.C. § 541(a)(2). The property is thus included in the Debtor's bankruptcy estate.

That the entire property is property of the estate under section 541(a)(2) does not answer the next question, however. A debtor may claim, from property of the estate, property claimed as exempt, but only to the extent allowed in section 522(b). *See* 11 U.S.C. 522(b). As the Debtor here chose the federal exemption scheme, the debtor can only claim as exempt what section 522(d) allows. Here, the Debtor claims exemption for this property as his residence, so section 522(d)(1) is the statute applicable for determining the reach of the exemption. *See* 11 U.S.C. § 522(d)(1) (debtor may claim as exempt "[t]he debtor's aggregate interest, not to exceed $21,625 in value, in real property or personal property that the debtor … uses as a residence…"). The key words in this statute are "the debtor's aggregate interest." Although we know that the entire property is property of the estate, the "debtor's aggregate interest" in this property may be less than the entire property, for exemption purposes. This is so because, while property of the estate is governed by section 541 of title 11, the "debtor's aggregate interest ... in property" is by necessity governed by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding"). We thus turn to an examination of Texas law.

Although the Texas Family Code does not explicitly state that a spouse's interest in community property is an undivided one-half beneficial interest in the whole, Texas case law makes that proposition clear. As stated by the Texas Supreme Court nearly 100 years ago:

> In this State the beneficial interests of the husband and wife in community property are equal, whether the grant or deed to the property be in the name of only one of them or to them jointly. Though the grant or deed be in the name of the husband, alone, the 'interest' or 'estate' of the wife in the property is as absolute as that of the husband. She acquires her interest in virtue of our law governing community property, and the force which that law imparts to a conveyance of the property to the husband during the marriage. She takes under a grant or deed in his name to the same extent that he does; and it is as fully through the grant as is true of his interest, that she is invested with her right.

*Burnham v. Hardy Oil Co.*, 108 Tex. 555, 564 (Tex. 1917). In short, under Texas law, "[a]ll property acquired during marriage is presumed to be community property, with each spouse owning an undivided one-half interest in all community assets." *United States v. Tischendorf*, 2011 U.S. Dist. LEXIS 63715, at *4 (N.D. Tex. May 17, 2011) (citations omitted); *see also Free v. Bland*, 369 U.S. 663, 664 (1962) (construing Texas community property law as granting each spouse an undivided one-half interest in the community property); *In re Norton*, 180 B.R. 168, 170 (E.D. Tex. 1995) ("In Texas, the presumption is that all property acquired during a marriage is community property. Each spouse owns an undivided half of this property.") (internal citations omitted).

3

Ms. Horrigan argues that because a divorce court has the authority to make an unequal division of community property, a spouse's interest in community property remains undetermined until divorce. Thus, asserts Ms. Horrigan, because this debtor is not yet divorced, the Debtor's aggregate interest in the community property at issue here should be presumed to be 100%. Ms. Horrigan is correct that, upon divorce, a court may award unequal shares of the marital property to each spouse. Section 7.001 of the Texas Family Code states that "[i]n a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE § 7.001. "A just and right division does not mean the division must always be 50-50 or equal." 1-7 TEXAS FAMILY LAW: PRACTICE AND PROCEDURE B7.01 (2012) (citing *Vannerson v. Vannerson*, 857 S.W.2d 659, 668 (Tex. App.--Houston [1st Dist.] 1993, den.); *Massey v. Massey*, 807 S.W.2d 391, 398 (Tex. App.--Houston [1st Dist.] 1991), den., 867 S.W.2d 766 (Tex. 1993)).

But, while divorce may result in one spouse receiving a larger share of community property by court order, prior to divorce, we need not make the illogical leap that, until then, each spouse has a 100% interest in community property. Instead, for so long as the parties are married, each spouse holds an undivided one-half beneficial interest in all community property, as a matter of law. After divorce, community property ceases to exist, and the parties' respective rights in property are converted to a tenancy in common, except as otherwise provided in the divorce decree. *See In re Finch*, 130 B.R. 753, 756 (S.D. Tex. 1991) ("The characterization of each spouse's ownership interest in community property as an undivided one-half community interest under Texas marital property law does not survive divorce proceedings, no matter how the divorce decree treats or fails to treat that property. If a divorce decree fails to divide community assets, the ex-spouses become tenants in common, or joint owners."); *see also Amason v. Franklin Life Ins. Co.*, 428 F.2d 1144, 1147 (5th Cir. 1970) ("Texas law provides that if the divorce court does not order a division of community property, then after divorce each spouse owns an undivided one-half interest in that property as a tenant in common in the same fashion as if they had never been married."). The Debtor's pre-divorce interest in community property is not "unspecified," as Ms. Horrigan argues. Instead, the Debtor, as of the filing of this case, held (and still holds) an undivided one-half beneficial interest in the community's interest in the property.

No court within the Fifth Circuit has yet ruled on how section 522(d)(1) applies to community property when only one spouse files for bankruptcy.[1] Other community property

---

[1] In *In re Kim*, 405 B.R. 179 (Bankr. N.D. Tex. 2009), the bankruptcy court for the Northern District of Texas did address whether a non-filing spouse had a vested homestead interest in community property, separate and apart from that of her debtor husband's, where the debtor's exemption of that property under Texas law was subject to the dollar cap of section 522(p). The bankruptcy court concluded that the non-filing spouse had "no separate and distinct exempt homestead interest in the property that would entitle her to compensation or to prevent the sale of the property." *Id*. at 188. *Kim* did not address the meaning of a debtor's "aggregate interest," under section 522(d)(1), in community property shared with a non-debtor spouse.

4

states, namely Wisconsin and California (in cases decided before California opted out of the federal exemption scheme), have addressed the question, but unfortunately, the courts have not been in agreement.

The issue was first analyzed by a bankruptcy court in California. *See Smith v. Bank of Glenwood (In re Smith)*, 8 B.R. 375 (Bankr. S.D. Cal. 1980). In *Smith*, the court addressed whether joint debtors who had both elected the federal exemptions under section 522(d) could stack the section 522(d)(5) wildcard exemption with respect to community property. *Id*. at 377. Interpreting the meaning of the "debtor's aggregate interest" in property under section 522(d)(5), the court found that "in California, the community property interests of joint debtors are present, existing and equal." *Id*. at 378. The court went on to reject the trustee's argument that because community property rights are indivisible during marriage, any exemption should be deemed invalid unless joined in by both debtors. *Id*. The court found that because the Bankruptcy Code makes it clear that all community property comes into the estate, "the divisibility of community property is of no significance" under the Code. *Id*. Ultimately, the court concluded:

> Even though the interest claimed exempt is in community property the Court can place a value on it. Under section 5105 of the California Civil Code[2] each debtor has an 'equal', or one half, interest in each piece of community property and this aggregate interest should be valued accordingly. Therefore, each joint debtor has an interest in each piece of community property valued at 50% of the total fair market value as of the date the petition in bankruptcy is filed.

*Id*. at 378-79. *See also In re Dahdah*, 20 B.R. 665, 667 (B.A.P. 9th Cir. 1982) (holding, in a joint debtor case, that "one spouse's aggregate interest for § 522(d) purposes cannot exceed 50 percent of value."); *In re Brents-Pickell*, 12 B.R. 352, 358 (Bankr. S.D. Cal. 1981) (holding that "a debtor can only exempt his or her one-half interest in community property under § 522(d) and the other half remains in the estate unless exempted by the other spouse.").

The majority of bankruptcy courts in Wisconsin, by contrast, have interpreted a debtor's "aggregate interest" in community property to mean a 100% interest, at least where the property claimed as exempt is not fungible or easily divisible.

Section 766.31(3) of the Wisconsin Statutes Annotated provides that "[e]ach spouse has a present undivided one-half interest in each item of marital property…" Wis. Stat. Ann. § 766.31(3). In *In re Xiong*, the debtor sought to exempt the equity in a certain piece of real property. 2006 Bankr. LEXIS 717, *7 (Bankr. E.D. Wis. May 3, 2006). The trustee argued that the interests of the non-filing spouse were property of the estate and so could not be exempted by

---

[2] Cal. Civ. Code § 5105 may now be found at Cal. Fam. Code § 751 (2012) ("The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing, and equal interests").

the debtor. *Id*. The court noted that the debtor, not the non-filing spouse, had claimed the exemption, and that "the exemption [was] within the dollar limits of the statute." *Id*. at *9. The court concluded:

> Since the debtor has an undivided interest in an asset that cannot readily be partitioned, the rational way to reconcile these two statutes is to permit the debtor to exempt all of the equity in indivisible marital property assets, up to the statutory value limits for one debtor.

*Id*. at *10. The court further supported its conclusion by reasoning:

> Here, the Debtor owns an undivided one-half interest in the Wisconsin real estate. He does not own one-half of a house; he owns a one-half interest in the entire house. Since he has an interest in the entire property, his "aggregate interest" for exemption purposes should logically extend to the entire equity, up to the dollar limit of the exemption.

*Id*. at *12.

Similarly, in *In re Passamore*, 156 B.R. 595 (Bankr. E.D. Wis. 1993)—a case involving a creditor's attempt to garnish the wages of the debtor's non-filing spouse and construing the scope of the automatic stay—the court stated:

> A spouse owns an undivided one-half interest in all assets and funds classified as marital property. The debtor does not own one-half of the post-petition garnished funds; he owns an undivided interest in all such funds. His interest cannot be partitioned by a creditor nor unilaterally severed by a spouse….Community property interests in a single asset or category of funds simply cannot be severed or treated separately in the bankruptcy context.

*Id*. at 599. *See also In re Vanderhei*, 449 B.R. 359, 361 (Bankr. W.D. Wis. 2011) consolidated with *In re Griffith*, 449 B.R. 909, 911 (Bankr. W.D. Wis.) (agreeing with *Xiong* and *Passamore*, "that at least in the context of assets which are not fungible or easily divisible by nature, the debtor's interest in the entire property justifies her ability to claim an exemption in the entire equity, up to the dollar limit of the exemption").

The *Xiong* decision discusses and distinguishes the only Wisconsin bankruptcy case to reach a contrary conclusion with respect to the meaning of a debtor's "aggregate interest" in community property—*In re Page*, 171 B.R. 349 (Bankr. W.D. Wis. 1994):

> *Page* involved a check that was made payable to a non-filing spouse and garnished by a judgment creditor of both the debtor and spouse. The debtor claimed the check as exempt and filed a motion to avoid the garnishment lien as impairing the exemption. Distinguishing *Passamore* as a case construing only the

6

> automatic stay, the *Page* court limited the debtor's exemption to one-half of the check. However, *Passamore* expressly and authoritatively described the nature of a debtor's marital property interest in contexts other than the application of the automatic stay: 'If a provision of the Bankruptcy Code applies to the debtor's community property interest in an asset, it applies to the entire asset. *Passamore*, 156 B.R. at 599. Moreover, while the debtor's interest in the check at issue in *Page* could easily be determined, valued and divided for exemption purposes, there is no comparable way to determine and value the Debtor's undivided one-half interest in a house or car, since they are not fungible. *Page* therefore can be distinguished and its holding confined to assets that are fungible or divisible by nature.

*Id*. at *13. *In re Page's* reading of section 522(d) has been followed by the bankruptcy court in New Mexico, *see In re Victor*, 341 B.R. 775, 781 (Bankr. D.N.M. 2006) (holding that "the debtor may exempt her one-half interest in the community property, while the whole of the property is included in the bankruptcy estate"), but subsequent decisions from the bankruptcy courts in Wisconsin have declined to follow *Page*.

The reasoning of the *Xiong* court has also found some support from commentators. In COLLIER FAMILY LAW AND THE BANKRUPTCY CODE, the authors note the following:

> Section 522(d) states that the debtor may exempt "the debtor's interest" or "the debtor's aggregate interest" in the property listed. In a joint case, the administration of which is consolidated, each spouse claims his or her interest in the community property exempt asset. Read literally, however, this could mean in a bankruptcy filed by one spouse that only a one-half interest in the community property assets listed could be claimed by the debtor since the nondebtor spouse's one-half interest is not "the debtor's interest," even though the nondebtor's interest in the community property asset is in the debtor's bankruptcy estate. Furthermore, the nonfiling spouse is not an 'individual debtor' that can claim property as exempt except in the limited circumstances set forth in section 522(l), nor can the debtor claim exemptions on behalf of the nonfiling spouse for the purpose of doubling allowable exemptions.

> On the other hand, it is arguable that to provide the debtor spouse with meaningful exemptions, the debtor spouse must be able to claim an entire asset as exempt, even though the debtor owns only a one half interest in the asset as community property. A community property interest is indivisible, and as section 541(a)(2) brings an entire community property asset into the estate of one spouse, one spouse must be able to remove the entire asset from the estate when claiming it exempt.

7

1-4 COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 4.04 (2010). Additionally, in *Community Property in Bankruptcy: Laws of Unintended Consequences*, the author states:

> A literal reading of 11 U.S.C. § 522(b) appears to limit a debtor to one half of the value of each potentially exempt community property asset. This is the debtor's interest in exempt assets, and the non-filing spouse's interest would then go to pay claims in the debtor's case. In practice, this is more likely to be the case when an asset is easily divisible, such as a bank account, or the asset would be sold. However, when the asset cannot be divided, such as an exempt community property house or car, there is no way the debtor can remove half of the asset from the estate. As a community property interest is a non-divisible interest in an entire asset, the only way to make the claim of exemption meaningful is to allow the entire asset to be removed from the estate.

McGarity, Margaret Dee, *Community Property in Bankruptcy: Laws of Unintended Consequences*, 72 LA. L. REV. 143, 158 (Fall, 2011) (citing *Griffith, Xiong, Vanderhei*).

Like Wisconsin's community property law, Texas' community property law gives each spouse an undivided one-half interest in all community property assets. *See, e.g., United States v. Tischendorf*, 2011 U.S. Dist. LEXIS 63715, at *4 ("All property acquired during marriage is presumed to be community property, with each spouse owning an undivided one-half interest in all community assets."); *In re Schmiedel*, 236 B.R. 393, 400 (Bankr. E.D. Wis. 1999) (noting that Wisconsin law, granting each spouse an undivided one-half interest in community property, "treat[s] community property as being owned entirely by both spouses.") (citing Wis. Stat. § 766.31(3)).[3]

The Wisconsin courts and Judge McGarity both seek to reach an equitable result in a seemingly inequitable structure. A closer examination of the interplay between section 541(a)(2)(B) on the one hand and section 522(d)(1) on the other shows that the way to equity is barred. Section 541(a)(2)(B) brings a debtor's interest in property *into* the estate, based in part on whether the *property* is liable for a claim against the debtor or for a claim against the debtor's spouse *to the extent that such [the debtor's] interest is so liable*. 11 U.S.C. § 541(a)(2)(B). In Texas, the entire joint management property is subject to a claim against the debtor, even if the claim is not against the debtor's spouse. *See United States v. Loftis*, 607 F.3d 173, 179 (5th Cir. 2010); *In re Melenyzer*, 140 B.R. 143, 148 (Bankr. W.D. Tex. 1992) ("[A]ll joint management

---

[3] Said the court in *Schmiedel*:
> Community property is a unitary concept of ownership and debt satisfaction. When a spouse files a bankruptcy petition, all community property is in the estate, and debts are treated without regard to who incurred them. Only in rare instances is community property treated as if the spouses own fractional interests, such as arose in Page, 171 B.R. 349. For most debts in community property states … it does not matter which spouse incurred the debt -- both spouses' interest in community property could be recovered to satisfy the debt. Similarly, upon the bankruptcy of a spouse, both spouses' interests in community property are protected…

236 B.R. at 400.

community property is subject to the liabilities incurred by either spouse prior to or during marriage."); *Miller v. Cadle Co.*, 2009 Tex. App. LEXIS 1736, at *7 (Tex. App.--Texarkana Mar. 12, 2009) ("Because the property was classified as joint management community property, it was subject to [the husband's] liabilities incurred before or during marriage"); *Williams v. Norwest Bank Mont.*, 1999 Tex. App. LEXIS 6469, at *6-7 (Tex. App.--Beaumont Aug. 26, 1999) ("Property which is the joint management community property during the marriage may be liable to satisfy a debt incurred by one of the spouses during marriage."); *see also* 11 U.S.C. § 541(a)(2)(B). Were it not for the property's status as a homestead in Texas, the entire property could be sold to satisfy a community debt, *see Inwood Nat'l Bank v. Hoppe*, 596 S.W.2d 183, 185 (Tex. Civ. App.--Texarkana 1980) (noting that "[a]ppellant, as a creditor of the community, had the right to resort to the entire non-exempt community property), -- and there are community debts in this case. Thus, the property, absent exemption, could be sold *in toto* by the trustee to pay creditors.

Of course, this property is exempt under Texas law and, outside bankruptcy, could never be sold to satisfy the claims of creditors (other than a narrow range of creditors, including the lender who lent the money to purchase the property). That would seem to support the idea that the Wisconsin approach is the right approach. But it is worth recalling that, at one time, there was a dollar cap in Texas on the homestead exemption.[4] And in those days, it was entirely possible that under state law a husband's creditor could force the sale of the homestead if the equity in the property exceeded the cap – even though as a result the wife would lose her homestead. *See Clement v. First Nat'l Bank*, 115 Tex. 342 (Tex. 1926) ("A judgment creditor has the right to subject to forced sale under execution the excess value in a homestead above the constitutional limitation."); *Battle v. John*, 49 Tex. 202, 211 (Tex. 1878) (stating that "if the homestead of the family is upon a tract of land of more than two hundred acres, whether the tract is common property, or belongs exclusively to the husband, or to him and his wife as tenants in common, the interest of the husband in that part of it not included within the homestead may be sold for the satisfaction of his debts, either on execution, or by the Bankrupt Court; and such sale works no change upon the title or interest of the husband in the homestead").

When a Texas debtor chooses the federal exemption scheme, the debtor has, as a practical matter, surrendered the benefit of being a Texas resident insofar as Texas' homestead exemption (which today has no dollar cap) is concerned, and has instead elected an exemption scheme that

---

[4] As explained by Anthony C. Coveny in *Saying Goodbye to Texas's Homestead Protection: One Step Toward Economic Efficiency with the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*:
> In the Constitution of the Republic, the exemption included either 200 acres of rural land or $2,000 worth of urban property. The 1869 Constitution provided for the same rural exemption but increased the valuation of an urban homestead to $ 5,000. In 1970 the legislature increased the urban homestead to $ 10,000…. In 1983 the Texas legislature changed the basis of an urban homestead to one premised upon the size of the lot.

Coveny, Anthony C., *Saying Goodbye to Texas's Homestead Protection: One Step Toward Economic Efficiency with the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 44 HOUS. L. REV. 433 (Summer, 2007).

does have a dollar cap, just as Texas' homestead law used to. The debtor has limited himself to the dollar cap imposed by the federal statute, a cap that is imposed not in terms of the estate's interest in the property (i.e., 100%, by virtue of section 541(a)(2)(B)) but rather in terms of the *debtor's* interest in the property. The Debtor gives up the right to a 100% undivided interest in the homestead that he might otherwise arguably have under the *Xiong* rationale, opting instead for a dollar-denominated exemption, applied not to his homestead interest as such, but rather to his beneficial interest in the property, measured not in terms of its use as a homestead, but measured instead in terms of its status as community property. In short, an undivided one-half interest in the property.

Making the debtor's interest an aggregate interest does not extend that interest beyond the beneficial interest recognized by community property law. The word "aggregate" simply assures that, if the debtor's residential interest extends to more than one item of property (as it conceivably could in some states),[5] all the items will be aggregated for purposes of applying the statutory cap. Thus, if the Debtor here wanted to shelter all of the property, the solution was simple: claim the state exemption scheme.[6]

**Conclusion**

For the reasons stated above, the court concludes that the Debtor's "aggregate interest" in the community property residence at issue here amounts to an undivided one-half interest under section 522(d)(1).[7] That undivided interest thus is valued at $182,465.00. Because the Debtor has chosen the federal exemptions, however, his exemptible interest in the residence is capped at $21,625.00. *See* 11 U.S.C. § 522(d)(1). The Debtor is accorded thirty (30) days to amend his Schedule C exemptions. Ms. Horrigan's Objection to Exemption [Docket No. 16] is hereby DENIED.

####

---

[5] Consider for example a debtor who resides in a manufactured home affixed to a lot of land. In Texas, the debtor's homestead is deemed to consist of both the manufactured home (an item of personalty when not affixed to land) and the lot (an item of realty). *See, e.g., Minnehoma Financial Co. v. Ditto*, 566 S.W.2d 354, 357 (Tex. App.—Forth Worth [2d Dist.] 1978); *In re Harris*, 166 B.R. 163, 165-66 (Bankr. D. Colo. 1994) (and cases cited therein).

[6] The debtor's spouse is not a party to this exemption fight. She chose not to participate in this filing. Those arguing for equity might complain that the spouse is unfairly deprived of her exemption. That is not the case, however. The federal scheme preempts the state exemption scheme insofar as the estate's ability to realize on the property to satisfy the claims against the estate. It needs to be remembered here that the nonfiling spouse gains some benefit from the debtor spouse's discharge. *See* 11 U.S.C. § 524(a). In addition, the nonfiling spouse can herself choose to file her own proceeding, and there to claim the same property as exempt. The trustee in her husband's case would be just another creditor prevented from realizing on his claim by virtue of the automatic stay in her bankruptcy filing. Thus, she could safely preserve her interest in the property. She could even choose the state homestead exemption. If she chooses not to file, so be it.

[7] At the hearing the Debtor requested permission to amend his schedules and claim the state exemptions in the event the court determined that his "aggregate interest" in the property amounted to a 100% interest. The court has concluded that the Debtor's "aggregate interest" under section 522(d) is only an undivided one-half interest.